UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALLEN KREKE, Individually and derivatively on behalf of MARATHON-SPARTA HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JAMES PERRY BRYAN, JOHN BRACKEN BRYAN, JOHN SHELBY BRYAN, and PHILLIP R. SMITH, <br><br> Defendants. | Case No. 24-cv-548-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on the defendants' response (Doc. 8) to the Court's February 28, 2024, order to show cause (Doc. 6) why this case should not be remanded to state court for lack of diversity jurisdiction. In the order to show cause, the Court noted that the defendants' Notice of Removal (Doc. 1) asserted that plaintiff Marathon-Sparta Holdings, Inc. ("MSH") and the defendants are all citizens of Texas, which would ordinarily destroy complete diversity of the parties. *See* 18 U.S.C. § 1332(a). The defendants responded to the order to show cause (Doc. 8) and amended their notice of removal (Doc. 9), and plaintiff Allen Kreke replied to their response (Doc. 17). In the meantime, Kreke filed a motion to remand (Doc. 15), the defendants responded to that motion (Doc. 21), and Kreke replied to that response (Doc. 22). Since all of these filings concern the same question—how to treat Marathon-Sparta Holdings, Inc.'s citizenship for diversity jurisdiction purposes—the Court deals with all these filings as a package and concludes that removal of this case was proper.

**I.    Procedural History**

The dispute between Kreke and the defendants centers on the contentious relationship

among them as shareholders of MSH. Kreke, one of MSH's founders, used to be an MSH officer and now has about a 20% interest in MSH, a close corporation. Defendants James Perry Bryan ("JP") and John Bracken Bryan ("JB") are also directors/officers of MSH. Defendant John Shelby Bryan ("Shelby") is JP's brother, and JB is JP's son. JP, Shelby, and JB own an overwhelming majority of the MSH shares. Defendant Philip R. Smith does not appear to be part of the Bryan family but is an officer of a related Marathon business entity. Essentially, Kreke believes the defendants mismanaged MSH in a way that damaged Kreke, both by having his employment terminated and by suffering loss of share value, and that damaged MSH.

The Texas-sized dispute is playing out in two forums: this Court and the United States District Court for the Southern District of Texas. MSH (controlled by the defendants in this case) made the first move when it sued Kreke in a Texas state court on August 11, 2023, for breach of a severance agreement made in connection with Kreke's termination, breach of fiduciary duty, various torts, and fraud in the inducement as well as several equitable claims. In January 2024, Kreke removed the case to the Southern District of Texas, where it remains as Case No 4:24-cv-14. On February 23, 2024, he filed compulsory counterclaims against MSH based on some of the same conduct alleged in this case, but asserting different legal theories—fraud in the inducement and breach of the severance agreement—and seeking a declaration that several of the severance agreement's covenants were unenforceable.

Meanwhile, on February 13, 2024, Kreke sued the defendants in an Illinois state court. On his own behalf, Kreke alleges causes of action against JP for breach of a 1999 oral contract relating to the founding of MSH (Count I) and fraudulent inducement to enter into that contract (Count II). On his own and on MSH's behalf, Kreke alleges causes of action against all the defendants for breach of the duties of loyalty (Count III) and care (Count IV) and for conspiracy

to breach fiduciary duties (Count V).  These are properly brought as derivative claims because they seek to recover for harm to MSH by its managers' alleged misconduct in addition to harm to Kreke directly.  The defendants removed that suit on February 26, 2024, on the basis of diversity subject matter jurisdiction.  As noted above, plaintiff MSH and the defendants share Texas citizenship, which raised the issue of whether the parties were completely diverse.  The Court ordered the defendants to show cause why the case should not be remanded for lack of complete diversity (Doc. 6).

The defendants responded to the show cause order (Doc. 8) by arguing that MSH should be realigned as a defendant or its citizenship should be disregarded because it is not the real party in interest in this case.  Kreke argues that neither is appropriate and that the case should be remanded to state court either for lack of complete diversity of citizenship or for lack of the minimum amount required to be in controversy.

**II.   Analysis**

   A.   Removal Standards

A defendant may remove to federal court a case filed in state court if the federal court would have had original jurisdiction to hear the case when the plaintiff filed it.  28 U.S.C. § 1441(a); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009).  Federal courts have original diversity jurisdiction over a matter when the parties are citizens of different states and the amount in controversy exceeds $75,000, not counting interest and costs.  28 U.S.C. § 1332(a).  The defendant, as the party seeking to invoke federal jurisdiction, bears the burden of demonstrating by a preponderance of the evidence facts showing that the parties are completely diverse and that the plaintiff stands to recover more than $75,000 in the suit. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Meridian Sec. Ins. Co.*

*v. Sadowski*, 441 F.3d 536, 540-41 (7th Cir. 2006); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006). "[F]ederal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur*, 577 F.3d at 758 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).

B.  <u>Realignment of Parties</u>

As a preliminary matter, no party truly disputes the citizenship facts of this case: Kreke is a citizen of Florida because he is domiciled there, MSH is a citizen of Texas because it is incorporated and has its principal place of business there, and the individual defendants are citizens of Texas because they are domiciled there. Thus, the facts on which the diversity of the parties is to be determined have been proved by a preponderance of the evidence. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540-41 (7th Cir. 2006). The rest depends on applying the law to those facts.

Where jurisdiction is based on diversity of citizenship, the Court may ascertain whether the alignment of the parties as plaintiff and defendant conforms with their true interests in the litigation. *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69-70 (1941); *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981). The Supreme Court has reminded that "[l]itigation is the pursuit of practical ends, not a game of chess." *Indianapolis*, 314 U.S. at 69. "Realignment is proper when the court finds that no actual, substantial controversy exists between parties on one side of the dispute and their named opponents. . . ." *Am. Motorists*, 657 F.2d at 149. "[T]he court may look beyond the pleadings and consider the nature of the dispute in order to assess the parties' real interests." *Id.* But it must focus on "the points of substantial antagonism, not agreement." *Id.* at 151. Here the Court must decide whether MSH and the defendants have a substantial controversy or whether they are, in reality, on the same side of the

4

dispute.

Stockholder derivative lawsuits pose a special challenge to the realignment analysis set forth in *Indianapolis*.   *See* 13E Wright & Miller, Fed. Prac. & Proc. Juris. § 3607 Realignment of Parties (3d ed.).

> The stockholder's derivative action . . . is an invention of equity to supply the want of an adequate remedy at law to redress breaches of fiduciary duty by corporate managers.   Usually the wrongdoing officers also possess the control which enables them to suppress any effort by the corporate entity to remedy such wrongs.   Equity therefore traditionally entertains the derivative or secondary action by which a single stockholder may sue in the corporation's right when he shows that the corporation on proper demand has refused to pursue a remedy, or show[s] facts that demonstrate the futility of such a request.   With possible rare exceptions, these actions involve only issues of state law and . . . can get into federal courts only by reason of diversity in citizenship of the parties.

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947).   The derivative cause of action is not the stockholder's but the corporation's, and the corporation is the real party in interest.   *Id.* at 522-23.

Kreke's claims on behalf of MSH are derivative claims because they complain that the defendants' mismanagement of MSH injured MSH by reducing its value and its viability, notwithstanding his statement that his claim should be treated as a direct action.[1]   Compl. ¶ 65. In fact, that allegation simply reflects the language of Texas Business Organizations Code § 21.563(c) stating that a *bona fide* "derivative proceeding brought by a shareholder of a closely held corporation *may be treated by a court as* a direct action brought by the shareholder for the shareholder's own benefit. . ." Tex. Bus. Org. Code § 21.563(c)(1) (emphasis added), by, for

---

[1] In fact, it appears any such direct action may not exist.   "The general rule in Texas is that individual stockholders have no separate and independent right of action for injuries suffered by the corporation which merely result in the depreciation of the value of their stock." *Guajardo v. Hitt*, 562 S.W.3d 768, 780 (Tex. App. 2018) (internal quotations and citations omitted).

5

example, paying any damages to the shareholder bringing the derivative claim when justice requires, *id.* at § 21,563(c)(2). This statute does not make the cause of action any less derivative in nature but simply describes how the Court may *treat* such a claim and makes them easier to bring by shareholders of close corporations. *Sneed v. Webre*, 465 S.W.3d 169, 187-88 (Tex. 2015).

Ordinarily, in a stockholder derivative action, the plaintiff includes the corporation as a necessary party defendant, *see Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir. 1990), but since the corporation's interest is in preventing its own mismanagement, that interest typically aligns with the plaintiff stockholder's. *See Koster*, 330 U.S. at 523. If the corporation were treated as a plaintiff, and if it were a citizen of the same state as its officers (a common occurrence since officers often live near the corporation's principal place of business) or directors, the *Indianapolis* rule of realignment based on interests would effectively foreclose a federal forum for such derivative lawsuits. *Id.*; *see, e.g., Swanson v. Traer*, 354 U.S. 114, 116 (1957) (district court wrongfully realigned corporation with plaintiff stockholder and dismissed for lack of jurisdiction).

This predicament is resolved by an exception to the *Indianapolis* rule: when "[a] corporation is controlled by its management, and when the management opposes the derivative suit the corporation is treated as a defendant rather than as a plaintiff for purposes of determining whether there is diversity jurisdiction." *Beck v. Dobrowski*, 559 F.3d 680, 687 (7th Cir. 2009); *see Swanson*, 354 U.S. at 116 (corporation should be a defendant where management opposed to stockholder's suit); *Koster*, 330 U.S. at 523 (corporations controlled by management hostile to the claim are given "special dispensation" from the *Indianapolis* rule); *Bagdon*, 916 F.2d at 382 ("the unwilling corporation is aligned as a defendant").

6

This exception was applied in *Smith v. Sperling*, 354 U.S. 91 (1957). There, the Supreme Court held that "whenever management is aligned against the stockholder and defends a course of conduct which he attacks," they are antagonistic to each other, regardless of whether the management actually committed any wrongdoing. *Id.* at 95. The antagonism is imputed to the corporation because it is managed by parties "hostile and antagonistic to the enforcement of the [stockholder's] claim." *Id.* at 97.

The case at bar, on its face, falls within the "antagonistic exception" to the *Indianapolis* rule of realignment. Most or all of the individual defendants are the managers of MSH and are opposed to the derivative claims that they breached fiduciary duties to MSH by acting beyond their authority, conducting fraudulent transactions, acting with conflicts of interest, and/or violating the rights of the other shareholders, all alleged to have resulted in loss of value to the corporation and its shareholders. *See Swanson*, 354 U.S. 116-17.

The Court therefore finds that MSH is properly realigned with the defendants for jurisdictional purposes only, resulting in complete diversity—a Florida plaintiff and Texas defendants.[2] Having found realignment proper, the Court need not consider alternative arguments about whether MSH is a "real party in interest" and whether its citizenship should be disregarded. The Court's March 15, 2024, order to show cause (Doc. 6) is discharged.[3]

---

[2] The defendants make much of the fact that Kreke and MSH are opponents in the Texas litigation. That is a red herring, irrelevant to the jurisdictional issue in this case where the only question is whether MSH's management opposes Kreke's lawsuit. *Smith*, 354 U.S. at 95. It does, so Kreke is antagonistic to the corporation for diversity jurisdiction purposes.

[3] The parties spill lots of ink over whether this case is more similar to *French v. Fisher*, No. 1:17-CV-248-LY, 2017 WL 9935520 (W.D. Tex. Oct. 11, 2017), or *Recruiting Force, LLC v. Mainthia Tech., Inc.*, No. A-19-CV-1045-RP, 2020 WL 1698826 (W.D. Tex. Apr. 8, 2020). As those cases do not concern realignment of parties and, in fact, apply limited liability company law rather than corporation law, they are not helpful.

C. <u>Amount In Controversy</u>

In his motion to remand, Kreke also challenges the defendants' proof by a preponderance of the evidence that the amount in controversy reaches the minimum required for diversity jurisdiction. As noted above, the defendants bear the burden of demonstrating by a preponderance of the evidence facts showing that the plaintiff stands to recover more than $75,000 in the suit. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540-41 (7th Cir. 2006); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006).[4] "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014).

When a defendant's allegation of the amount in controversy is challenged by the Court or a plaintiff, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. After the Court decides any contested facts relevant to the amount in controversy, "the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum." *Meridian*, 441 F.3d at 542; *see St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) ("[T]he sum claimed by [the proponent of federal jurisdiction] controls if the claim is

---

[4] Kreke cites the now-defunct standard that the defendants must prove a "reasonable probability that jurisdiction exists," that is, that the minimum amount in controversy is satisfied. *Meridian* was the death knell of that phraseology, *Meridian*, 441 F.3d at 540 ("We now retract that language; it has no role to play in determining the amount in controversy."); *id.* at 542 ("'Reasonable probability that jurisdiction exists', a phrase with no provenance and no following outside this circuit, is banished from our lexicon."), clarifying that the defendant must demonstrate *by a preponderance of the evidence* facts showing that the amount in controversy requirement is satisfied.

apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

In cases removed based on diversity jurisdiction, the amount in controversy is determined based on the plaintiff's complaint at the time the notice of removal is filed. *Meridian*, 441 F.3d at 538; *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir. 1993). Thus, in this case, the defendants must establish by a preponderance of the evidence facts showing that more than $75,000 was in issue at the time they filed the notice of removal on February 26, 2004.

As for Kreke's direct claims against JP in Counts I and II, the jurisdictional minimum is plainly met. One item of damages Kreke claims is his wrongful termination in March 2023 as a result of JP's misconduct. The defendants have presented evidence in their response that Kreke's annual salary in that job far exceeded $75,000, and Kreke has not presented evidence or argument to the contrary. By the time the case was removed in February 2024, Kreke had missed almost 11 month of that large salary. The defendants have demonstrated by uncontested evidence that the jurisdictional amount in controversy has been satisfied as to these claims.

The Court further finds that the derivative claims alleged on behalf of MSH in Counts III, IV, and V also satisfy that threshold. The defendants have provided evidence that MSH's 2022 EBITA (annual earnings before interest, taxes and amortization) was $1.2 million and that MSH was valued at least $5-6 million. Kreke pleads that MSH is now not able to pay him for his 20% share, which amounts to about $1 million, taking the most conservative estimate. This undoubtedly reflects a loss of corporate value in excess of $75,000.

Furthermore, to the extent the evidence is insufficient to support this devaluation, the Court would exercise supplemental jurisdiction over Counts III, IV, and V under 28 U.S.C. § 1367(a). In light of these findings, a detailed examination of aggregation rules, attorney's

fees, or the effect of a failure to stipulate to less than $75,000's being in issue is not necessary. Remand is not appropriate.

In fact, it is likely that Kreke's challenge to the amount in controversy is frivolous; he knew his salary amount, and he likely knew the devaluation of MSH was not, to a legal certainty, less than $75,000.  His challenge to the amount in controversy was a waste of everyone's resources.

### III. Conclusion

For the foregoing reasons, the Court:

- **DISCHARGES** the March 15, 2024, order to show cause (Doc. 6); and
- **DENIES** the plaintiffs' motion to remand (Doc. 15).

The Court **RESERVES RULING** on the defendants' motion to dismiss or, in the alternative, to transfer this case to the United States District Court for the Southern District of Texas (Doc. 18) and Kreke's motion for jurisdictional discovery (Doc. 25).

**IT IS SO ORDERED.**
**DATED:   June 21, 2024**

>                                  s/ J. Phil Gilbert
>                                  **J. PHIL GILBERT**
>                                  **DISTRICT JUDGE**